UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
-------------------------------------------------------------------------X
KENNETH RAMIREZ,

                                                CIVIL ACTION NO.

                    Plaintiff,

    -against-

THE COMMONWEALTH OF PENNSYLVANIA;
THE COMMONWEALTH OF PENNSYLVANIA d/b/a    Plaintiff Demands A
BUREAU OF JUVENILE JUSTICE SERVICES;          Trial by Jury
THE COMMONWEALTH OF PENNSYLVANIA d/b/a
YOUTH FORESTRY CAMP #2;
JEREMY KISTLER (*individually*);
ERIC LENNARTZ (*individually*);
CHRISTOPHER KIVAK (*individually*); and,
GREGORY SWARTZLANDER (*individually*).

                                 Defendants.
-------------------------------------------------------------------------X

     Plaintiff, Kenneth Ramirez, as and for his Complaint against the above Defendants respectfully alleges upon information and belief as follows:

### NATURE OF THE CASE

1. Plaintiff complains pursuant to his rights to freedom of speech under the First Amendment of the Constitution of the United States, his Substantive Due Process Rights, 42 U.S.C. § 1983, his protection under the Pennsylvania Whistleblower Statute 43 P.S. § 1421-1428, and for discrimination based on his race in violation of 42 U.S.C. § 1983.

### JURISDICTION AND VENUE

2. This Court has jurisdiction Pursuant to 42 U.S.C. §1983, 28 U.S.C. §1343(3) involving a deprivation of rights and under 28 U.S.C. §1331 involving a federal question or issue, and supplemental jurisdiction thereto.

3. This action involves a Deprivation of Rights of a citizen, by a state actor, protected under the Due Process Clause of the Fourteenth Amendment involving a Deprivation of Rights under the First and Fourteenth Amendments as well as a question of federal law under the First and Fourteenth Amendments of the United States Constitution.

4. Venue is proper in this district based upon the fact that Defendants' principal place of business within the County of Luzerne, Commonwealth of Pennsylvania, within the Middle District of Pennsylvania. Additionally, the events took place within the Middle District of Pennsylvania.

**PARTIES**

5. Plaintiff, KENNETH RAMIREZ (hereinafter also referred to as Plaintiff and "RAMIREZ") is a resident of the County of Monroe, in the Commonwealth of Pennsylvania.

6. At all times material, Defendant Commonwealth of Pennsylvania hereinafter also referred to as Defendant and "Commonwealth") is a Commonwealth of Pennsylvania governmental entity.

7. At all times material, Defendant Commonwealth of Pennsylvania operates the Pennsylvania Bureau of Juvenile Justice Services.

8. At all times material Defendant Commonwealth, under the Bureau of Juvenile Justice Services operates Youth Forestry Camp #2 (hereinafter referred to as "YFC#2").

9. At all times material YFC#2 is located at 85 Youth Forestry Lane, White Haven, PA 18661.

10. At all times material YFC#2 has a government office located in Carbon County, Pennsylvania.

11. At all times material, the Commonwealth of Pennsylvania does business as YFC#2.

12. At all times material the Commonwealth of Pennsylvania does business as the Bureau of Juvenile Justice Services and as YFC#2.

13. At all times material the Commonwealth of Pennsylvania, the Bureau of Juvenile Justice Services and YFC#2 are individual and joint employers of Plaintiff.

14. At all times relevant Defendant JEREMY KISTLER (hereinafter referred to as Defendant and "KISTLER") was employed by Defendant COMMONWEALTH.

15. Defendant KISTLER was employed as a Youth Development Aid Supervisor for Defendant COMMONWEALTH at Defendant COMMONWEALTH's YFC#2 location.

16. At all times material, Defendant KISTLER held supervisory authority over Plaintiff.

17. At all times material Defendant ERIC LENNARTZ (hereinafter referred to as Defendant and "LENNARTZ") was employed by Defendant COMMONWEALTH.

18. At all times material, Defendant LENNARTZ was employed as a Youth Development Counselor Manager for Defendant COMMONWEALTH.

19. At all times material, Defendant LENNARTZ held supervisory authority over Plaintiff.

20. At all times material Christopher KIVAK (hereinafter referred to as Defendant and "KIVAK") was employed by Defendant COMMONWEALTH.

21. At all times material, Defendant KIVAK was employed as a Youth Development Aid Supervisor for Defendant COMMONWEALTH.

22. At all times material, Defendant KIVAK held supervisory authority over Plaintiff.

23. At all times material, Defendant GREGORY SWARTZLANDER (hereinafter referred to as Defendant and "SWARTZLANDER") was employed by Defendant COMMONWEALTH.

24. At all times material, Defendant SWARTZLANDER was employed as a Youth Development Counselor Supervisor for Defendant COMMONWEALTH.

25. At all times material Defendant SWARTZLANDER held supervisory authority over Plaintiff.

## MATERIAL FACTS

26. On or around October 21, 2018, Defendants COMMONWEALTH hired Plaintiff RAMIREZ, a bi-racial African American and Latino male to be a therapist at Defendants YFC#2 location.

27. At all times material, Plaintiff Kenneth Ramirez also suffers from a disability.

28. Plaintiff suffers from depression and anxiety and Defendants were at all times aware of Plaintiff's disability.

29. Depression is persistent feeling of sadness and loss of interest that can interfere with an individual's daily functioning.

30. Anxiety disorders cause individuals to have intense, excessive and persistent worry and fear about everyday situations.

31. These symptoms interfere with Plaintiff's concentration, thinking, interpersonal communications, sleep patterns and other major life functions.

32. Plaintiff is medicated as a result of his disability.

33. At all times material, YFC#2 is a forestry camp run by the Bureau of Juvenile Services for the Commonwealth.

34. YFC#2 operates as a juvenile detention and rehabilitative facility for juveniles who are convicted of breaking the laws of the Commonwealth of Pennsylvania.

35. At all times Defendants were acting under the color of law by operating the juvenile detention facility at YFC#2.

36. Plaintiff's duties at YFC#2 were to conduct therapy with the juveniles at the facility on a one-on-one basis to work with them and help rehabilitate them from the behavioral problems that they suffered, which resulted in them breaking the law.

37. At all times relevant, Plaintiff was to conduct the therapy sessions with the juveniles in a Confidential environment.

38. On or around January 2019, approximately three months into Plaintiff's employment, Plaintiff began to notice illegal conduct against the juveniles by other YFC#2 employees.

39. Plaintiff became immensely distressed by the things that he witnessed.

40. By means of example only and not to be construed as an exhaustive list, Plaintiff witnessed Defendant Kistler and other YFC#2 employees withhold meals from the juveniles if they determined that the juveniles had "acted out."

41. Plaintiff also witnessed the juveniles being exposed to mental and physical abuse on a near daily basis.

42. In one instance, Plaintiff witnessed Defendant Kistler go into the Intense Individual Counseling ("IIC") room and begin to scream obscene rap lyrics in the juveniles' face.

43. After approximately three minutes of this, the juvenile got up from his desk chair to move to the opposite side of his room to escape the torture.

44. At that time, Defendant Kistler physically restrained the juvenile, which is unlawful conduct because physical restraint when the juvenile was not being aggressive or a threat is unnecessary force.

45. On another occasion, one of the juveniles at the facility was standing outside of the dining hall. When the counselors at the facility asked the juvenile to stop and they addressed him, the juvenile responded in kind and answered the question.

46. At that time, the counselors instructed the juvenile to go into the dining hall.

47. When the juvenile turned to go into the dining hall, which he was instructed to do by Defendant COMMONWEALTH's employees, Armando Holmes and Lati Woodruff. The juvenile was wrestled to the ground by the counselors.

48. Defendants later promoted Armando Holmes to a supervisory position.

49. After three months of employment and witnessing the unnecessary force being used on the juveniles, Plaintiff contacted Child Line.

50. Plaintiff, in his capacity as a therapist of this facility is a mandated reporter under the mandated reporting statute of Pennsylvania.

51. According to the mandated reporting statute, Plaintiff is required to report juvenile abuse to the Child Line hotline run by Defendant COMMONWEALTH.

52. In the alternative, Plaintiff can also report unlawful conduct such as juvenile abuse to his supervisors. However, if Plaintiff reports the abuse or unlawful conduct to his supervisors and they fail then report, Plaintiff must still report the abuse or unlawful conduct himself.

53. On or around January 2019 after witnessing a number of juvenile abuse incidents, Plaintiff reached out to Child Line to report the unlawful abuse of the juveniles at YFC#2.

54. Upon information and belief, Defendant Kistler, who is one of the employees at YFC#2 who was using excessive force and subjecting the juveniles to mental and physical abuse is related to the Director of Child Line. Upon information and belief, Defendant KISTLER'S father is the person in charge of Child Line for Defendant COMMONWEALTH.

55. When a mandated reporter makes a report to Child Line, that report is typically anonymous and the reporter's name is not provided to the organization against whom the complaint is made.

56. Almost immediately after Plaintiff reported, he was approached by Defendant SCHWARTLANDER and asked why he was making reports to Child Line about the abuse.

57. Plaintiff explained that he was a mandated reporter and as a result he was compelled to report the unlawful conduct and abuse because he was compelled to do it by law in addition to the fact that Plaintiff was vehemently opposed to the conduct of the counselors at YFC#2.

58. SWARTZLANDER then instructed Plaintiff via email that reports should be made internally to supervisors prior to reporting to Child Line so that the matters could be handled internally.

59. Plaintiff explained that this was contrary to the law and that even if Plaintiff reported the unlawful conduct and abuse to his supervisors, he still had a duty to report to Child Line if his supervisors did not follow through and report the conduct.

60. Plaintiff immediately knew that Defendant KISTLER'S father had reported to Defendants that Plaintiff had reported to Child Line.

61. In or around February 2019, Defendants instituted a campaign of retaliation against Plaintiff for exercising his rights as a mandated reporter and reporting the unlawful abuse of the juveniles to Child Line.

62. Prior to Plaintiff's reports to Child Line, Plaintiff had three days a week that he worked in a closed room to conduct his therapy with the juveniles and complete the necessary reports and paperwork related to the therapy according to state mandated guidelines.

63. Plaintiff was able to use the therapy office to conduct the therapy to ensure that the confidentiality of the juveniles' related to the therapy was protected.

64. In or around February 2019 just after Plaintiff reported to Child Line in January 2019, Defendants reduced Plaintiff to one day per week in the therapy room.

65. In addition, Defendants then forced Plaintiff to work with the counselors to essentially watch the juveniles.

66. Even when Defendants were in compliance with one counselor per the number of juveniles, Plaintiff was still not permitted to go work on his therapy related duties.

67. At all times material, Defendants KISTLER and KIVAK were in charge of scheduling the therapists for their duties in the therapy room.

68. Both Defendants denied Plaintiff the ability to "flex out" or utilize the therapy room to complete the essential functions of his job regularly through the course of his employment.

69. Defendant KISTLER was also one of the counselors that Plaintiff reported to Child Line for abuse.

70. Defendant KISTLER stopped scheduling Plaintiff in the therapy room in direct retaliation for Plaintiff calling Child Line and reporting Defendant KISTLER's abuse of the juveniles.

71. Plaintiff consistently asked if he could go to the therapy office to work on his therapy related case load when Defendants were in compliance and was consistently told "no."

72. However, other Caucasian therapists made reports to Child Line and were not similarly stripped of their duties and ability to use the therapy room like Plaintiff.

73. Defendants treated Plaintiff differently than his Caucasian counterparts who also made reports to Child Line, but were not similarly stripped of their therapy duties and responsibilities.

74. On one occasion, in or around June 2019, Defendants were in compliance with one therapist watching the juveniles. Plaintiff asked Mr. Coleman, a Youth Development Aid for Defendants, who was observing the juveniles if Mr. Coleman minded if Plaintiff went to the office to complete his reports and work on his therapy related duties.

75. Mr. Coleman told Plaintiff that was fine because he was in ratio.

76. Moments later, Defendant KIVAK came into the therapy room and said to Plaintiff, "you escaped." Then Defendant KIVAK instructed Plaintiff to go back down with the counselor and watch the juveniles and again refused to let Plaintiff complete his therapy related duties.

77. Plaintiff found this comment to be racially discriminatory since Defendant KIVAK is Caucasian and Plaintiff is bi-racial, Latino and African American.

78. Plaintiff exclaimed to Defendant KIVAK that he found this to be racially discriminatory because the term you escaped has connotations of slavery associated with its use.

79. In or around October 2019, after one of Plaintiff's many reports to Child Line, Defendant KISTLER was explaining to another staff member about a situation or altercation occurred between two of the juveniles housed at YFC#2.

80. During the demonstration and explanation, Defendant KISTLER pretended that Plaintiff was one of the juveniles in the scenario.

81. In doing so, Defendant KISTLER proceeded to assault Plaintiff.

82. Plaintiff immediately told Defendant KISTLER not to put his hands-on Plaintiff.

83. Just one day prior to this assault, Defendant KISTLER and another YFC#2 employee, Daleta, confronted Plaintiff about why Plaintiff continued to report Defendant KISTLER to Child Line.

84. Defendant KISTLER physically assaulted and attempted to humiliate Plaintiff by putting his hands on him.

85. Plaintiff then reported that Defendant KISTLER had put physically assaulted Plaintiff and that Plaintiff was objecting to this unwanted conduct.

86. Still, Defendants did nothing to investigate or to take appropriate remedial measures.

87. Throughout the rest of 2019, Defendants continued to interfere with Plaintiff's ability to use the therapy room and to complete his therapy related case load work in a confidential and protective environment for the juveniles.

88. In or around May 10, 2020, Plaintiff was in a staff meeting with Defendant KISTLER and Defendant LENNARTZ.

89. During that staff meeting Defendant LENNARTZ was discussing behavioral issues that were ongoing with one of the juveniles at the facility.

90. During that meeting Plaintiff spoke up about the juvenile's behavior and explained that he felt that the juvenile was exhibiting behavioral issues as a result of the physical and mental abuse that the juveniles had to endure at the facility.

91. Joan McNulty, Plaintiff's colleague therapist at the facility had written an email about this same juvenile to Defendant SWARTZLANDER prior to this meeting. In the email, Ms. McNulty explained that Defendants had been withholding meals from the juvenile.

92. Following that meeting, Defendant LENNARTZ asked Plaintiff to follow Defendant LENNARTZ to his office. When Plaintiff and Defendant LENNARTZ entered the office, Defendant LENNARTZ verbally accosted Plaintiff about sticking up for the juvenile during the meeting.

93. Defendant LENNARTZ conduct was so outrageous and aggressive that the Christopher Orner, Defendant COMMONWEALTH'S Facility Director for YFC#2, came down to the office to make sure that everything was alright.

94. Plaintiff continued to contact Child Line throughout the course of his employment.

95. On each and every occasion, Defendants continued to keep Plaintiff from being able to complete his therapy related duties.

96. In or around June 2020, Plaintiff made his final report to Child Line.

97. Even after Plaintiff made this report, he continued to ask Defendants for the ability to conduct his therapy sessions with the juveniles in private and Defendants still refused to allow Plaintiff to do so.

98. Defendants also continued to not allow Plaintiff to use the office to type up his therapy notes even when the number of counselors to juveniles was within ration.

99. Plaintiff's similarly situated Caucasian co-workers, like Joan McNulty, did not lose privileges of their employment when they made reports to Child Line.

100. Defendants discriminated against Plaintiff because of his race as a bi-racial black and Latino male.

101. As a result of the pervasive nature of Defendants discrimination, Plaintiff began to have exacerbated symptoms related to depression and anxiety.

102. Plaintiff explained to Defendants that he was continuing to suffer from his disability of stress and anxiety.

103. Defendants did not offer Plaintiff any accommodation, nor did they stop the retaliation by allowing Plaintiff to go back to his normal therapy schedule with the juveniles to complete his work.

104. Rather, Defendants told Plaintiff that he could take disability leave.

105. At this point, Plaintiff returned to therapy, though he had not had to treat for his depression or anxiety for approximately ten years.

106. As Plaintiff returned to therapy he was diagnosed with not only depression and anxiety, but also with post-traumatic stress disorder.

107. Post traumatic stress disorder is a mental health condition that is triggered by a terrifying event either experiencing it or witnessing it.

108. Symptoms of post traumatic stress disorder may include flashbacks, nightmares, and severe anxiety, as well as uncontrollable thoughts about the event.

109.    Plaintiff suffered from severe anxiety as well as flashbacks.   Plaintiff had a flashback to the juvenile abuse he witnessed at YFC#2.

110.    On or around July 2020, Plaintiff went out on disability leave because of the exacerbating symptoms related to his disability.

111.    Plaintiff remained out of work for approximately two weeks.

112.    When it was time for Plaintiff to return, he explained that he could no longer continue working at that facility as a result of Defendants unlawful conduct, retaliation, and failure to take any remedial measure with respect to Defendant KISTLER or the other counselors that Plaintiff had reported to Child Line.

113.    Rather than investigate or to take appropriate remedial measures, Defendants offered Plaintiff to switch positions.

114.    Defendants offered Plaintiff nine options of other available positions.   Eight out of nine of the positions were PG levels below Plaintiff's current job grade, which would have amounted to a pay and benefits demotion.

115.    The ninth position, which was a PG 7 level position, the same as the position Plaintiff held at YFC#2, was at White Haven Center, which was slated to be closed by Defendant COMMONWEALTH within two years.

116.    Defendants only accommodation was for Plaintiff to take a demotion in position, or to leave the incessant and rampant retaliation at YFC#2 by taking a position at another facility that Defendants planned to close within three years.

117.    Defendants never investigated Plaintiff's complaints to Child Line or took appropriate remedial measures against the individuals like Defendant KISTLER who were abusing the juveniles.

118. Plaintiff did take the position at the White Haven facility. However, on or around Plaintiff's first week at the facility there was a Code Red situation for one of the adults in the psychiatric facility.

119. This caused Plaintiff to have an anxiety attack and flashbacks to the abuse he witnessed at YFC#2 and again exacerbated his post- traumatic stress disorder.

120. On or around September 1, 2020, Plaintiff was constructively terminated from his position with Defendants.

121. Not only did Defendants at all times fail to investigate Plaintiff's complaints to Child Line, upon information and belief, Defendant COMMONWEALTH rewarded Defendant KISTLER by offering him Plaintiff's former position as a therapist.

122. Defendants violated Plaintiff's due process rights and his right to freedom of speech by making reports to Child Line.

123. Defendants retaliated against Plaintiff as a result of Plaintiff reporting Defendant KISTLER'S and other YFC#2 employees' abuse of the juveniles.

124. Defendants at all times failed to investigate Plaintiff's claims or take appropriate remedial measures.

125. Defendants subjected Plaintiff to substantial retaliation, which exacerbated Plaintiff's disability.

126. Defendants instituted a campaign of retaliation against Plaintiff for his reports, yet never instituted the same restrictions against Plaintiff's Caucasian co-workers who also made reports to Child Line.

127. At all times Defendants discriminated against Plaintiff as a result of his race and retaliated against Plaintiff when he complained of the unlawful conduct both against Plaintiff himself and against the juveniles at YFC#2.

### AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION
### (DISPARATE TREATMENT)
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT of 1964
### (Not Against Individual Defendants)

128. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint

129. Plaintiff filed a charge of discrimination based on his race and color, retaliation, hostile work environment and constructive discharge on March 18, 2021.

130. The EEOC originally issued a Right to Sue Letter on March 19, 2021.

131. This action is being commenced within 90 days of receipt of the above right to sue letter.

132. Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

133. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff because of his race and color.

134. Plaintiff is a bi-racial black and latino male.

135. Plaintiff made reports of abuse of juveniles to Child Line.

136. As a result of Plaintiff's reports, he was berated, stripped of duties, and Defendants made it impossible for Plaintiff to do the essential functions of his position.

137. Defendants did not take similar actions against Plaintiff's similarly situated Caucasian colleagues who made reports of juvenile abuse to Child Line.

138. Defendants conduct was ongoing throughout Plaintiff's employment.

139. Despite Plaintiff's protests no investigation or remedial measures were taken by Defendants.

140. Plaintiff makes claims for all damages that he suffered as a result of Defendants unlawful conduct.

### AS A SECOND CAUSE OF ACTION FOR RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (Not Against Individual Defendants)

141. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

142. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to … discriminate against any of his employees … because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

143. Defendants retaliated against Plaintiff because he opposed Defendants' unlawful employment practices.

## AS A THIRD CAUSE OF ACTION
## IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964
## (HOSTILE WORK ENVIRONMENT/CONSTRUCTIVE DISCHARGE)

144. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

145. Defendants unlawful discrimination and retaliation against Plaintiff was willful.

146. Defendants conduct was pervasive as they eliminated Plaintiff's ability to do the essential functions of his job on a daily basis.

147. No reasonable person in Plaintiff's position would have been able to work under the conditions to which Defendants subjected Plaintiff.

148. Plaintiff could not continue to work in a discriminatory environment.

149. As a result, Plaintiff was constructively discharged by Defendants.

150. Plaintiff makes claims for all damages that he suffered as a result of the hostile work environment and the constructive discharged that he faced as a result of Defendants unlawful conduct.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress, back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Philadelphia, Pennsylvania
June 17, 2021

          DEREK SMITH LAW GROUP, PLLC
          *Attorneys for Plaintiff*

By: _____
       Samuel C. Wilson, Esq.
       1835 Market Street, Suite 2950
       Philadelphia, Pennsylvania 19103
       (215) 391-4790